NOT FOR PUBLICATION                                          CASE CLOSED

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN THE MATTER OF DAVID LEON SEYMOURE and TRACY ANN SEYMOURE; IN THE MATTER OF WILLIE JAMES YARBROUGH, :<br><br>Debtors. | Civil Action No. 07-4960 (JAP)<br>Civil Action No. 07-4967 (JAP)<br><br>**OPINION** |

Presently before the Court is Appellant, State of New Jersey, Department of Labor's ("Appellant" or "NJDOL") motion for rehearing of the Court's March 12, 2008 Opinion affirming the Bankruptcy Court's September 6, 2007 Order pursuant to Fed. R. Bankr. P. 8015. Debtors, David and Tracy Seymoure and Willie Yarbrough ("Debtors") did not oppose the motion.

**I.     Background**

Debtors both filed for unemployment benefits with the NJDOL in 1997 and 1998, which the agency paid based on Debtors' representations that they were unemployed and, therefore, eligible. On the contrary, however, it later appeared that both Debtors were employed during the time they received unemployment benefits; thus, they were not entitled to any of the weekly benefits paid during any period of employment. Upon learning this information, the NJDOL determined that Debtors committed fraud and were liable to refund the benefits overpayments.

Debtors did not appeal that determination.

Meanwhile, on July 31, 2004, Debtors David and Tracy Seymoure ("Seymoure") filed for Chapter 13 bankruptcy and on July 1, 2005, Debtor Willie Yarbrough ("Yarbrough") also filed for Chapter 13 bankruptcy.  The NJDOL filed a secured proof of claim as to both Seymoure and Yarbrough and, through recoupment, recovered a portion of the fraudulently obtained pre-petition benefits.  The NJDOL did not seek relief from the automatic stay.

On March 21, 2007, Debtors filed separate Motions to Compel Issuance of Unemployment Insurance Benefits.  The NJDOL opposed the motions.  Oral argument was conducted and the Bankruptcy Court held that the NJDOL violated the automatic stay of the bankruptcy proceedings by recouping Debtors' unemployment benefits, even though Debtors fraudulently obtained those benefits.  The Bankruptcy Court further found the violation of the stay to have been "willful" and directed Debtors' attorney to file a certification of fees.[1]  Debtors' attorney filed an application seeking an award of $1,598.03 in fees and costs on behalf of Seymoure and $10,571.53 on behalf of Yarbrough.  The NJDOL opposed these applications.

On September 6, 2007, after hearing oral argument regarding the applications for attorney's fees and costs, the Bankruptcy Court ordered the NJDOL to pay Debtors' attorney $5,000 in fees plus $60.53 in costs.  The NJDOL timely appealed.  On March 12, 2008, the Court affirmed the Bankruptcy Court's September 6, 2007 Order awarding attorney's fees and costs to Debtors and remanded the action for further proceeding to the Bankruptcy Court to state the basis for any calculation of the fees and costs.

---

[1] Debtors share the same attorney, William H. Oliver, Jr., Esq.

II.     **Legal Discussion**

    A.     **Standard of Review**

Fed. R. Bankr. P. 8015 allows a party to file a motion for rehearing within ten days after the District Court makes an entry of judgment. Rule 8015, however, is silent as to the appropriate standard for granting a rehearing. Many courts have determined that because Rule 8015 was derived from Fed. R. App. P. 40, courts may look to the appellate rule for guidance. *See In re Lisanti Foods*, No. 04-3868, 2006 U.S. Dist. LEXIS 76844, at *13 (D.N.J. Oct. 11, 2006) (noting that Rule 8015 does not address the standard for rehearing and that several courts have looked to Fed. R. App. P. 40 for a standard).

Fed. R. App. P. 40 requires that a party seeking rehearing "state with particularity each point of law or fact that the petitioner believes the court has overlooked or misapprehended...." FED. R. APP. P. 40(a). Pursuant to the Rule 40 standard, courts should "grant Rule 8015 motions only if the petitioner demonstrates that the court made an error of fact or law with respect to the issues already presented to the court; neither new evidence nor new arguments are considered valid bases for relief." *Lisanti*, 2006 U.S. Dist. LEXIS 76844, at *13. *See also New York v. Sokol*, 94 Civ. 7372, 1996 U.S. Dist. LEXIS 10812, at *11 (S.D.N.Y. July 31, 1996) ("the purpose of a petition for rehearing is to direct the court's attention to some material matter of law or fact which it has overlooked in deciding the case, and which, had it been given consideration, would probably have brought about a different result").

Other courts have chosen to follow the traditional standard used when considering motions for reconsideration pursuant to Fed. R. Civ. P. 60(b). Under this standard, there are

three grounds for granting a motion for reconsideration:  (1) an intervening change in controlling law has occurred; (2) evidence not previously available has become available; or (3) it is necessary to correct a clear error of law or prevent manifest injustice.  *See, e.g., Carmichael v. Everson*, No. 03-4787, 2004 WL 1587894, at *1 (D.N.J. May 21, 2004); *Brackett v. Ashcroft*, No. Civ. 03-3988, 2003 WL 22303078, at *2 (D.N.J. Oct. 7, 2003).  The party seeking reconsideration bears a heavy burden and "must show more than mere disagreement with the Court's decision."  *G-69 v. Degnan*, 748 F. Supp. 274, 275 (D.N.J. 1990).  Further, the moving party's burden requires more than a "recapitulation of the cases and arguments considered by the court before rendering its original decision."  *Id.*

**B.     Analysis**

Appellant asserts that rehearing is appropriate because the Court erroneously applied the Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA") amendments retroactively.  The BAPCPA was enacted in April 2005, and as a result of the BAPCPA, amendments were made to 11 U.S.C. § 362(k).[2]  The Court's March 12, 2008 Opinion recognized these amendments.  The Court determined that although the NJDOL's actions could be supported by persuasive legal authority and would not be considered "willful" pre-

---

[2] Specifically, subsection (h), which dealt with "willful" violations of automatic stays, was redesignated as subsection (k), and a new subsection (h) was inserted.  Further, Paragraph 1 of subsection (k) was amended to include an exception to the subsection, which was provided by the addition of Paragraph 2 to the subsection.  Paragraph 2 of § 362(k) now states, in relevant part:

> "If such violation [of the automatic stay] is based on an action taken by an entity in good faith belief that subsection (h) applies to the debtor, the recovery under paragraph 1) of this subsection against such entity shall be limited to actual damages."

amendment, under the revised § 362(k), the "good faith" defense is no longer permissible. The only exception to the imposition of attorney's fees and costs is provided by Paragraph 2 in § 362(k) and, thus, held that the Bankruptcy Court's September 6, 2007 Order was proper.

Although the BAPCPA was enacted on April 20, 2005, its effective date was not until October 17, 2005. *See* BAPCPA, § 1501(a) (setting the effective date 180 days after the date of enactment). In addition, nothing in the statute evinces any legislative intent of retroactive application. Neither Paragraph 2 of § 1501 of the BAPCPA nor any other provision in the BAPCPA sets a separate effective date for amendments to § 362. *See* BAPCPA, § 1501(b)(1) (stating that unless "otherwise provided in this Act and Paragraph (2), the amendments made by this Act shall not apply with respect to cases commenced under [T]itle 11, United States Code, before the effective date of this Act."). It is fundamental, then, absent such direction, that the statute be applied prospectively. Seymoure and Yarbrough filed for Chapter 13 bankruptcy on July 31, 2004 and July 1, 2005, respectively. As such, the amendments to § 362(k) were not in effect at the time of Debtors' Chapter 13 filings and cannot be applied retroactively. Therefore, the Court grants Appellant's motion for rehearing.

The Court must now determine whether the Bankruptcy Court improperly awarded attorney's fees and costs to the Debtor. Fed. R. Bankr. P. 8013 provides in pertinent part: "On appeal the district court...may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings." FED. R. BANKR. P. 8013. A bankruptcy judge's findings of fact "shall not be set aside unless clearly erroneous." *Id.* As this appeal raises only a legal issue, the Court shall review the Bankruptcy Court's conclusion of law *de novo*. *I.R.S. v. Pransky*, 261 B.R. 380, 384 (D.N.J. 2001); *see also Brown v. Pa. State*

*Employees Credit Union*, 851 F.2d 81, 84 (3d Cir. 1988).

A violation of a bankruptcy stay does not, in itself, trigger an award of attorney's fees and costs. Rather, the violation must be a "willful" violation. Title 11, Section 362(k) of the United States Code states, in relevant part:

> "An individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees."

A party cannot be said to have committed a "willful" violation of a stay unless the court gives fair warning that certain acts are forbidden. *See I.R.S. v. Norton*, 717 F.2d 767, 774 (3d Cir. 1983) ("A party should not be held in contempt unless a court first gives fair warning that certain acts are forbidden; any ambiguity in the law should be resolved in favor of the party charged with contempt.").

Moreover, the Third Circuit in *Univ. Med. Ctr. v. Sullivan*, 973 F.2d 1065 (3d Cir. 1992), held that a violation of an automatic stay is not "willful" if the law regarding the alleged violation is sufficiently unsettled.[3] In *University*, the debtor filed for bankruptcy and was granted an automatic stay. The defendant sought to recover overpayments the Department of Health and Human services made to the plaintiff, pursuant to the Medicare Act, by withholding reimbursement payments. The Third Circuit affirmed the lower court's decision that the defendant was not entitled to withhold money for the overpayments during the automatic stay

---

[3] The Court acknowledges that the bankruptcy court for the Eastern District of Pennsylvania concluded that the decision in *University* recognizing a "good faith" exception for willful violations of § 362(k), formerly § 362(h), was legislatively overruled by the adoption of the BAPCPA. *See In re Mu'min*, 374 B.R. 149 (Bankr. E.D. Pa. 2007). The *Mu'min* court held that no such exception exists. The Court, however, declines to apply the holding of the *Mu'min* court as Debtors' Chapter 13 applications were filed prior to the amendments to § 362(k).

and affirmed the denial of attorney fees. The Third Circuit reasoned that the law was unsettled as to whether the defendant's actions violated the stay. Therefore, because there was persuasive legal authority to support the defendant's actions, the defendant acted in good faith and could not be held to have "willfully" violated the stay.

Since the *University* decision, there has been no controlling law or guidance from the Third Circuit determining whether the recoupment of fraudulently obtained unemployment benefits violates an automatic stay. The unsettled law and lack of binding precedent instructing how courts should find stems from the split between courts in this circuit as to how they regard unemployment benefits.[4] Some liken unemployment benefits to Social Security benefits in that both types of benefits are government entitlements. Under this theory, individuals have a property right in unemployment benefits in the same way they do with Social Security benefits. These courts find that there is no exception that allows a state agency to recoup fraudulently acquired benefits from debtors.

In *Lee v. Schweiker*, 739 F.2d 870, 875 (3d Cir. 1984), the appellant received overpayments of social security benefits from the Social Security Administration ("SSA"). Once the SSA realized the overpayments, it started deducting part of appellant's monthly benefits to recover the overpayments. Appellant then filed a bankruptcy petition. The SSA was unaware of the petition and continued making monthly deductions until the entire overpayment balance had

---

[4] In researching the case law, the Court came across numerous decisions in districts throughout the country and found no discernable consensus as to whether recoupment of unemployment benefits fraudulently obtained is a violation of an automatic stay. For purposes of the Court's analysis, however, it has limited its discussion to cases within the Third Circuit Court of Appeals and district courts and bankruptcy courts within the District of New Jersey. Of note, the majority of cases dealing with this issue have found in favor of recoupment of fraudulently obtained unemployment benefits.

been paid. The appellant sued to recover the deductions and the district court held that she was not entitled to recover the amount withheld pre-petition. On appeal, the Third Circuit affirmed the lower court's holding as to the pre-petition withholdings, but reversed the decision as to the post-petition withholdings. The *Lee* court distinguished contract recoupment cases from social welfare benefit recoupment cases, reasoning that "a social-welfare statute entitling an individual to benefits," such as social security, "is not a contract." *Lee*, 739 F.2d at 876. Rather, "social welfare payments, such as social security, are statutory 'entitlements.'" *Id.* Social security statutes are meant to provide income security to recipients and the court determined that this type of income should be protected by an automatic stay.[5]

Other courts do not recognize unemployment benefits as being a statutory entitlement similar to Social Security benefits. These courts liken unemployment benefits to a form of

---

[5] The Court acknowledges two cases in other districts that courts in this District have cited. In *In re Malinowski*, 156 F.3d 131 (2d Cir. 1998), the debtor initially collected unemployment benefits before the determination of his eligibility. The New York Department of Labor ("NYDOL") then concluded that the debtor was ineligible for the benefits because he voluntarily left his employment without good cause. The debtor filed for Chapter 13 bankruptcy and then re-filed for unemployment benefits, which he was granted. The court determined that the NYDOL improperly recouped overpayment of unemployment benefits from the debtor for several reasons, one being that the court adopted the view that unemployment benefits were social welfare benefits. The case is distinguishable from the present action, however, in that there was no finding of fraud on behalf of the *Malinowski* debtor. Further, unlike the New Jersey statute concerning unemployment benefits, the New York statute followed by the *Malinowski* court does not expressly provide for recoupment. See *Mewborn*, 367 B.R. at 540 n. 6.

The *Sarmiento* court, *see infra* p. 8, noted *In re McClinton*, No. BK04-84288, Ch. 7, 2006 Bankr. LEXIS 2069 (Bankr. D. Neb. Aug. 29, 2006). In that case, a debtor received overpayment of unemployment benefits from the state agency. Debtor filed for bankruptcy and the agency filed a proof of claim for the overpayment. The agency never received any money from the bankruptcy estate and debtor was discharged of all her pre-petition debts. Debtor then filed for unemployment benefits and the agency withheld funds from her weekly payments until the overpayment balance was paid in full. Debtor moved to have her file reopened in order to file an adversary proceeding against the agency for the withholding of funds, which the court granted. The court reasoned that "there is no exception to discharge or dischargeability of a debt in favor of either the [SSA] or state agencies administering the unemployment benefits scheme." *McClinton*, 2006 Bankr. LEXIS 2069, at *9.

societal contract or insurance.  The court in *In re Mewborn*, 367 B.R. 529 (Bankr. D.N.J. 2006), found that the NJDOL's recoupment of fraudulently obtained unemployment benefits against future benefits was permissible.  Similar to Debtors here, the debtor in *Mewborn* had been employed while he received unemployment benefits.  When the NJDOL learned of the fraud, the agency found him ineligible for benefits and filed a certificate of debt to recover the money in the amount of $7,503.75.  The debtor later filed for Chapter 13 bankruptcy protection and listed the NJDOL's claim.  The debtor then filed for new unemployment benefits and by the time of his hearing, made payments totaling $2,719.54, which completed his Chapter 13 plan.

       The *Mewborn* court held that the NJDOL properly recouped from the debtor, but the agency was only entitled to attach the amount already recouped and no further offsets were allowed.  In its reasoning, the *Mewborn* court provided a comprehensive summary of bankruptcy court opinions in a number of districts to determine that recoupment of fraudulently obtained unemployment benefits was "justified because unemployment compensation is a societal contract and not an entitlement."  *Mewborn*, 367 B.R. at 539.  Unemployment benefits are not a form of social welfare such as social security benefits.  Individuals do not personally contribute to any unemployment benefits fund as they do with social security benefits; rather, they give to an unemployment insurance fund, which serves as a form of societal insurance.  Additionally, individuals do not have a property right to the unemployment benefits as they do with social security benefits because there is no statutory entitlement.  Further, unemployment benefits can be discontinued whereas individuals are never disqualified from receiving social security benefits.

       In its analysis, the *Mewborn* court also highlighted that "New Jersey's unemployment

compensation benefits statute allows for recoupment of overpayments obtained through fraud." *Id.* at 540.  The court found support for its holding in other New Jersey courts' decisions, which determined that "recoupment provisions of New Jersey's statue are 'designed to preserve the Unemployment Trust Fund for the payment of benefits to those individuals entitled to receive them.'"  *Id.*  In allowing recoupment, the State is not only protecting its unemployed, but the public interest in not having the Unemployment Trust Fund "depleted by failure to recoup benefits erroneously paid to an unentitled recipient."  *Id.*

Subsequent to the filing of this action, an almost identical case, *In re Sarmiento & Ramos*, No. 06-4729, 2007 U.S. Dist. LEXIS 67275 (D.N.J. Sept. 12, 2007), was appealed from the bankruptcy court to the District of New Jersey.  The Chapter 13 appellee-debtor fraudulently obtained unemployment benefits.  The NJDOL, therefore, withheld post-petition unemployment benefits to offset the pre-petition benefits the debtor received.   The bankruptcy court found that the NJDOL's withholding of the benefits was improper; however, on appeal, the court reversed.  After considering the unsettled law on the matter, as well as the element of fraud and other practical issues, the *Sarmiento* court determined that recoupment is proper where fraud is proven.  To hold otherwise, "would be a breach of fiduciary responsibility to allow wrongdoers to commit fraud without redress through protections afforded plaintiff under bankruptcy laws." *Sarmiento*, 2007 U.S. Dist. LEXIS 67275, at *8-9.

Even more recently, the Bankruptcy Court addressed the recoupment issue in *In re McWilliams*, No. 04-41805, 2008 Bankr. LEXIS 967 (Bankr. D.N.J. 2008).  Similar to Debtors here, the debtor in *McWilliams* received unemployment benefits from the NJDOL based upon representations that he was unemployed when, in actuality, he was.  When the NJDOL learned of

this misrepresentation, a hearing was held where it was determined that the debtor willfully committed fraud. The debtor did not appeal the decision. A few years later, the debtor filed for Chapter 7 bankruptcy, which was converted into Chapter 13, and filed for unemployment benefits. Although the NJDOL determined he was eligible for benefits, the agency withheld payments equal to the principal amount of pre-petition debt owed until it recouped the benefits that had been fraudulently obtained.

The Bankruptcy Court determined that recoupment was proper when the debtor fraudulently misrepresented his employment status in order to obtain benefits. In its reasoning, the Bankruptcy Court noted that "unemployment compensation is a societal contract rather than an entitlement and the payment of pre-petition benefits obtained through fraud and the recovery of these payments post-petition arise out of the same transaction for purposes of recoupment." *McWilliams*, 2008 Bankr. LEXIS 967 at *9. Further, the Bankruptcy Court found support for recoupment in New Jersey court cases and the public interest.

The Bankruptcy Court, in deciding this matter, did not have the benefit of *Sarmiento* or *McWilliams*. In light of the unsettled law in this area, which both opinions highlighted, the Court finds that it is unclear that recoupment in this context is a violation of the stay, let alone a "willful" violation, which might trigger an award of attorney's fees and costs.[6]

### III.  Conclusion

For the reasons stated above, the Appellant's motion for rehearing is granted. Upon

---

[6] The NJDOL has not appealed the Bankruptcy Court's determination that the agency violated the stay and, therefore, the Court does not need to determine whether recoupment was proper.

rehearing, it is the finding of the Court that the United States Bankruptcy Court's September 6, 2007 Order assessing attorney's fees and costs against Appellant was erroneous and is hereby reversed.  An appropriate order follows.


                                    /s/ JOEL A. PISANO
                                    United States District Judge


Dated: April 21, 2008